UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| DOYLE THORNTON TENO, III, | ) | |
|---|---|---|
| *Plaintiff,* | ) | |
| | ) | No. 3:18-CV-159 |
| v. | ) | |
| | ) | Judge Collier |
| MYRON IWANSKI, STEVE MEAD, | ) | Magistrate Judge Guyton |
| LESLIE MEAD, and STEVE EMERT, | ) | |
| | ) | |
| *Defendants.* | ) | |

# **M E M O R A N D U M**

Before the Court are motions to dismiss by Defendants Steve Mead, Leslie Mead, and Steve Emert (Docs. 29, 39) and by Defendant Myron Iwanski (Doc. 37). Plaintiff, Doyle Thornton Teno, III, responded in opposition. (Doc. 45.) The Meads and Iwanski both filed replies. (Docs. 46, 47.) By leave of Court, Plaintiff filed a sur-reply to Iwanski's reply. (Doc. 51.)

## **I.  BACKGROUND**[1]

Plaintiff and three of the four Defendants in this case hold positions with Anderson County, Tennessee. Plaintiff is the Delinquent Tax Attorney and Deputy Trustee for Anderson County. Iwanski is the Trustee of Anderson County, in which capacity he supervises Plaintiff's duties as Deputy Trustee. Iwanski is also the Chairman of the Anderson County Finance Committee, which is responsible for the office in which Plaintiff's Internal Revenue Service ("IRS") Form W-2 is kept. Emert and Steve Mead are both members of the Anderson County Board of Commissioners. The fourth Defendant, Leslie Mead, holds no position with Anderson County but is married to Steve Mead.

---

[1] This summary of the facts comes from Plaintiff's Second Amended Complaint (Doc. 27).

Emert ran against incumbent Anderson County Mayor Terry Frank in the May 1, 2018, mayoral primary election. Iwanski and the Meads supported Emert's candidacy. (Doc. 27 ¶¶ 15, 16, 37.)

Sometime before April 5, 2018, Iwanski got a copy of Plaintiff's IRS Form W-2 from the Anderson County Finance Department and a copy of Plaintiff's IRS Form 1099 from the Anderson County Clerk and Master's Office. The people who gave him the documents said that Iwanski was the only person to have asked for and gotten these documents.

On April 8, 2018, the Meads were distributing campaign material supporting Emert at a campaign event in Oak Ridge, Tennessee. Included in those materials was an eleven-page, fifty-three-paragraph document titled "Things You Need to Know About [Mayor] Terry Frank" (the "Campaign Document"). Paragraph 25 of the Campaign Document discusses Plaintiff's IRS Form 1099, his IRS Form W-2, and his compensation:

> New Delinquent Tax attorney [Plaintiff Teno] has used a full-time county job with county benefits and other full-time county employees to do this work that he gets paid for independently by the Clerk and Master. *(see 1099s to Doyle Teno)* Before Myron Iwanski was appointed Trustee, Mr. Teno was the highest paid county worker by the hour. Unfortunately, no one really knew how many hours he worked since he mostly worked at home and had the Trustee's staff do his work and mailings. ***1099 for last year was $120,000 (from Clerk and Master) & also got W-2 for about $40-50,000*** and received full county benefits. And now he is demanding 10% commission on collected late taxes instead of the commission-approved 1%. He also refuses to turn over any of the Title Reviews he has charged for… and wants them automatically assessed and charged before they are ever done to everyone paying late taxes.

(Doc. 27 ¶ 26 (emphasis added; errors in original) (quoting Campaign Doc. ¶ 25).) Plaintiff alleges the foregoing paragraph implies that Plaintiff's Forms 1099 and W-2 were attached to the Campaign Document. (*Id.* ¶ 25.) Plaintiff alleges the Meads and Emert were "acting as agents of Defendant Iwanski" when they "obtained, inspected, disclosed and used Plaintiff's confidential Tax Return and Return Information," including his W-2 and 1099. (*Id.* ¶ 31.)

The Meads continued to distribute the Campaign Document after April 8. Emert used excerpts of the Campaign Document in his campaign materials.

Plaintiff filed this action against Defendants on April 23, 2018. (Doc. 1.) In his Second Amended Complaint (the "Complaint"), he asserts causes of action against Defendants for (1) inspecting and disclosing his confidential tax information in violation of 26 U.S.C. §§ 6103 and 7431, and (2) invasion of privacy and unreasonable intrusion into private affairs under Tennessee common law. (Doc. 27 ¶¶ 36–42.)

The Meads filed a motion to dismiss (Doc. 29) and a memorandum in support (Doc. 30). Emert sought and obtained leave of Court to join the Meads' motion. (Docs. 36, 39.) Iwanski filed a separate motion to dismiss relying on the grounds set out in the Meads' motion and memorandum. (Doc. 37). Plaintiff responded in opposition to both motions. (Doc. 45.) The Meads filed a reply. (Doc. 46.) Iwanski also filed a reply (Doc. 47), to which Plaintiff filed a sur-reply (Doc. 51) by leave of Court (Doc. 49).

## II.  STANDARD OF REVIEW

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, a court must accept all of the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)). The court is not, however, bound to accept as true bare assertions of legal conclusions. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In deciding a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a

"short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 678. Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

If a party presents matters outside the pleadings in connection with the motion, the court must either exclude those matters from consideration or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

### III. DISCUSSION

The Court will first address Defendants' respective motions to dismiss the claims against them for disclosure of confidential tax information under 26 U.S.C. § 6103. The Court will then address Defendants' motions to dismiss the state-law privacy claims against them.

#### A. Disclosure of Confidential Tax Information

Plaintiff's first cause of action is brought against all Defendants for a violation of Section 6103 of the Internal Revenue Code, 26 U.S.C. § 6103. Section 6103 serves two basic policy objectives. *Crown Cork & Seal Co. v. Penn. Human Relations Comm'n*, 463 F. Supp. 120, 122 (E.D. Penn. 1979). "First, it assures taxpayers that the returns and information which they supply to the [federal] government in connection with the assessment and payment of taxes will not

become public knowledge. Second, it provides for access to the information by persons who are deemed to have a material interest therein." *Id.* at 122–23 (footnote & citation omitted); *see also In re U.S.*, 817 F.3d 953, 960 (6th Cir. 2006) (tracing "checkered history" of taxpayer privacy, from total lack of privacy at time of Civil War, to treatment as public records open to inspection subject to Treasury Department regulations in the early twentieth century, to availability only to federal agencies and Congressional committees, and finally to stronger protection from disclosure to the Executive branch in the wake of President Richard Nixon's resignation).

Section 6103 provides that "[r]eturns and return information shall be confidential." 26 U.S.C. § 6103(a). A "return" is defined as

> any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title *which is filed with the Secretary* by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

*Id.* § 6103(b)(1) (emphasis added). "Return information" is defined to include

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, *received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return* or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

*Id.* § 6103(b)(2)(A) (emphasis added).

The confidentiality obligations of Section 6103 apply to three categories of persons, described in three distinct subsections: (1) officers or employees of the United States, *id.* § 6103(a)(1); (2) officers or employees of states or of certain local agencies who receive access to returns or return information under specified subsections of Section 6103, *id.* § 6103(a)(2); and

5

(3) other persons, or their officers or employees, who have access to returns or return information under certain other specified subsections of Section 6103, *id.* § 6103(a)(2).[2] One of the subsections listed in the "other persons" category is subsection (n), which the Court discusses further below with respect to Plaintiff's claim against Iwanski. *See infra* § III(A)(2).

Section 7431 allows a taxpayer to bring a civil action for damages if the taxpayer's return or return information has been subject to knowing or negligent inspection or disclosure, if the inspection or disclosure violates Section 6103. 26 U.S.C. § 7431(a). Such a cause of action may be brought against the United States, if an officer or employee of the United States is responsible for the inspection or disclosure, *id.* § 7431(a)(1), or against "any person who is not an officer or employee of the United States," if that person is responsible for the inspection or disclosure, *id.* § 7431(a)(2).

The unlimited-sounding category of persons who may be made defendants in a Section 7431 action is, however, limited by the requirement that the disclosure must have violated Section 6103. If a defendant is not in one of the three categories in Section 6103(a), that defendant cannot violate Section 6103, and there can be no claim against him or her under Section 7431. *Dietl v. Mirage Resorts, Inc.*, 180 F. Supp. 2d 1150, 1153 (D. Nev. 2002); *see also Hrubec v. Nat'l R.R. Passenger Corp.*, 49 F.3d 1269, 1270 (7th Cir. 1995) (defendants must come within the categories set out in Section 6103 for plaintiff to have a cause of action under Section 7431). The Court therefore turns first to Defendants' arguments that they do not come within any of the categories in Section 6103.

---

[2] The Court of Appeals for the Seventh Circuit characterized the three categories in an earlier version of the statute, as, respectively, "employees of the IRS, state employees to whom the IRS makes authorized disclosures, and private persons who obtain return information from the IRS with strings attached." *See Hrubec v. Nat'l R.R. Passenger Corp.*, 49 F.3d 1269, 1270 (7th Cir. 1995).

1. **Disclosure Claims Against the Meads and Emert**

The Meads and Emert argue Plaintiff neither pleads nor shows that they are within any of the categories of persons in Section 6103(a) against whom a Section 7431 action may be brought. In his response, Plaintiff does not identify a category of Section 6103(a) for the Meads or Emert, but relies on his allegation that the Meads and Emert were acting as Iwanski's agents, and argues these Defendants "conspired and facilitated a violation of § 6103." (Doc. 45 at 5, 7.) Plaintiff also argues they were only able to obtain his tax information "because Anderson County maintained copies of its employees tax returns for the purpose of tax administration." (*Id.* at 7.)

Neither the Complaint nor Plaintiff's response identifies a category into which the Meads or Emert fit. (*See* Doc. 27.) Nor does Plaintiff point to factual allegations in the Complaint that would make it plausible to conclude they fit into the § 6103 categories.

Instead, Plaintiff argues he may bring a Section 7431 action against the Meads and Emert because they were acting as Iwanski's agents. There are two problems with this argument. First, although the Complaint asserts that the Meads and Emert were Iwanski's agents, it contains no factual allegations to support such a conclusion. The Court is not bound to accept as true this bare assertion of a legal conclusion. *See Papasan*, 478 U.S. at 286. Second, the Court sees no grounds for extending liability to agents, even if the Meads and Emert were Iwanski's agents. Section 6103(a) applies to officers and employees of prohibited persons, but it makes no mention of agents.[3] Plaintiff also points to no legal authority authorizing the extension of Section 6103's categories to agents. Agency is, in any case, a common-law construct under which a principal may be bound by the actions of his or her agents—not the other way around. *See, e.g.*, *Jones v.*

---

[3] Employees are generally agents of their employers, but not all agents are employees. The inclusion of the word "employee" in subsections (a)(2) and (a)(3) therefore does not support Plaintiff's argument that "agents" are subject to Section 6103(a).

7

*Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998) (discussing common-law theories of agency under which principal may be liable for agent's actions). There is neither legal support nor logic for extending liability under Section 7431 to persons not included in Section 6103 merely because those persons are alleged to be agents of someone who is.

Equally unavailing is Plaintiff's argument that the Meads and Emert should be liable under Section 7431 because they and Iwanski "conspired and facilitated a violation of § 6103." (Doc. 45 at 7.) Just as Plaintiff has not shown there can be liability under § 7431 for "agents," he has failed to provide any basis for predicating a cause of action for a violation of § 7431 on theories of conspiracy or facilitation.

Last, Plaintiff argues that the Meads and Emert only got Plaintiff's tax information "because Anderson County maintained copies of its employees tax returns for the purpose of tax administration." (Doc. 45 at 7.) This argument does nothing to change the fact that the Meads and Emert, themselves, are not within any of the categories of Section 6103.

The Court concludes the Meads and Emert are not persons who may be sued under Section 7431. Plaintiff's disclosure claims against the Meads and Emert will be **DISMISSED WITH PREJUDICE**.

### 2. Disclosure Claim Against Iwanski

Iwanski likewise argues that Plaintiff neither pleads nor shows that he is within any of the categories of persons in Section 6103(a) against whom a Section 7431 action may be brought. In his response, Plaintiff argues Iwanski comes within the statute in two ways: first, under Section 6103(a)(2), as an officer or employee of the state of Tennessee; and second, under Section 6103(a)(3), as a person who had access to returns or return information under subsection (n).

### a. U.S.C. § 6103(a)(2): Officer or Employee of the State

For Section 6103(a)(2) to apply, Iwanski must be an "officer or employee of any State . . . who has or had access to returns or return information under this section or section 6104(c)." 26 U.S.C. § 6103(a)(2). According to Plaintiff, Iwanski's role as Anderson County Trustee makes him an officer or employee of the state of Tennessee. The Complaint alleges the "office of Trustee is a state of Tennessee constitutional office and an elected county official" with certain duties set out by statute. (Doc. 27 ¶ 13 (citing Tenn. Code Ann. § 8-11-101 *et seq.*).) The Court is not bound to accept as true this assertion of a legal conclusion, however. *See Papasan*, 478 U.S. at 286.

The office of Trustee for each county is indeed established in the Constitution of the State of Tennessee, and the duties of the position are set out in state statutes: "The qualified voters of each county shall elect for terms of four years a legislative body, a county executive, a Sheriff, *a Trustee*, a Register, a County Clerk, and an Assessor of Property. Their qualifications and duties shall be prescribed by the General Assembly." Tenn. Const. art. VII, § 1 (emphasis added). But Plaintiff points to no authority showing that the mere creation of an office within the Tennessee Constitution or the establishment of duties for the office by state law makes that office a state, as opposed to a county, office. On the contrary, under Tennessee law, the office of Trustee for a county is a "county office." *Jordan v. Knox Cty.*, 213 S.W.3d 751, 774 (Tenn. 2007) (county charter not legally valid where it "does not provide for the constitutional county offices," including that of trustee); *see also State ex rel. Winstead v. Moody*, 596 S.W.2d 811, (Tenn. 1980) ("There are many county offices other than those enumerated in Art. VII, § 1."); Tenn. Code Ann. § 8-24-102(a) ("For the purposes of determining the compensation to be received by the various county officers, 'general officers' includes . . . county trustees . . . .").

Plaintiff has not shown that Iwanski's position as Anderson County Trustee makes him an officer or employee of the state of Tennessee. Plaintiff accordingly may not rely on Section 6103(a)(2) to state a claim against Iwanski under Section 7431.

### b. U.S.C. § 6103(a)(3): Subsection (n)

Plaintiff's second argument is that Iwanski comes within Section 6103(a)(3) as an "other person . . . who has or had access to returns or return information under . . . subsection (n)." 26 U.S.C. § 6103(a)(3). The Complaint alleges "Defendant Iwanski is Chairman of the Anderson County Finance Committee which has policy, procedures, and regulations responsibilities for the office where Plaintiff Teno's IRS Form W-2 is kept." (Doc. 27 ¶ 14 (citing Tenn. Code Ann. § 5-21-104).) Plaintiff also argues that "the Anderson County Trustee's office processes and stores returns and return information for the purpose of tax administration," bringing Iwanski into subsection (n) in his role as Trustee. (Doc. 45 at 4.)

Subsection (n) states, in full, as follows:

> Pursuant to regulations prescribed by the Secretary, returns and return information *may be disclosed to any person*, including any person described in section 7513(a),[4] to the extent necessary in connection with the processing, storage, transmission, and reproduction of such returns and return information, the programming, maintenance, repair, testing, and procurement of equipment, and the providing of other services, for purposes of tax administration.

*Id.* § 6103(n) (emphasis & footnote added). Subsection (n) thus allows disclosures of information by the IRS to persons involved in the administration of the tax process. *See Clode-Baker v. Cocke*, No. A-11-CV-977-LY, 2012 WL 1357023, at *2 (W.D. Tex. April 16, 2012) (describing § 6103(n) as dealing with tax administration process); *see also Pinero v. Jackson Hewitt Tax Serv. Inc.*, No.

---

[4] Section 7513(a) deals with making copies. It authorizes the Secretary of the Treasury or a designee to have a federal agency or other person "process films or other photoimpressions of any return, document, or other matter, and make reproductions from films or photoimpressions of any return, document, or other matter." 26 U.S.C. § 7513(a).

CIV.A. 08-3535, 2009 WL 1424541, at *5 (E.D. La. May 20, 2009) (describing § 6103(n) as a "category of government contractors"). It allows the Secretary of the Treasury or a designee to disclose returns and return information to persons who will (1) process, store, transmit, or reproduce the returns and return information; (2) program, maintain, repair, test, or procure equipment; or (3) provide other services for tax administration purposes.

Plaintiff has not alleged facts that make it plausible to conclude Iwanski is within subsection (n), either in his role as Chairman of the Anderson County Finance Committee or in his role as Anderson County Trustee.

The Complaint refers to a section of the Tennessee Code that creates a "county financial management committee" and requires it to "establish and approve policies, procedures and regulations in addition to the specific provisions of this chapter, for implementing a sound and efficient financial system for administering the funds of the county." Tenn. Code Ann. § 5-21-104(a), (b)(1). The financial system for which the county is to establish policies, procedures, and regulations "shall include budgeting, accounting, purchasing, payroll, cash management and such other financial matters necessary to an efficient system." *Id.* § 5-21-104(b)(2). Nowhere does Chapter 21 of Title 5 of the Tennessee Code mention the IRS, state that a county financial committee is to provide any sort of federal tax administration services, or state that a county financial committee is to receive returns or return information from the IRS.

The inclusion of "payroll" among the committee's responsibilities does imply a connection with federal income tax matters, and Plaintiff expressly relies on the allegation that his Form W-2 is kept by an office over which Iwanski has responsibility as Trustee. But just because a document has a connection with federal income taxes does not make that document a return or return information. In order to be "return information," information must be "received by, prepared by,

11

furnished to, or collected by the Secretary with respect to a return." 26 U.S.C. § 6103(b)(2)(A). Return information thus only includes disclosures that "*emanate from* a return *that was filed* with the IRS." *Huertas v. U.S. Dep't of Educ.*, No.08-3959, 2009 WL 3165442, at *5 (D.N.J. Sept. 28, 2009) (emphasis added) (citing *Stokwitz v. United States*, 831 F.2d 893, 895 (9th Cir. 1987)). Consistently with this, subsection (n) deals with disclosures by the IRS to persons who will assist the IRS in the tax administration process. Section 6103 is not a "general prohibition against public disclosure of tax information." *Stokwitz*, 831 F.2d at 896. It does not forbid disclosure when information comes from sources other than "employees of the IRS, state employees to whom the IRS makes authorized disclosures, [or] private persons who obtain information from the IRS with strings attached," as may happen under subsection (n). *Hrubec*, 49 F.3d at 1270. An accountant who publicly spreads information her clients have given her in order to prepare their taxes, for example, has not violated Section 6103, because she did not receive the information from the IRS. *See id.* (providing illustration).

An IRS Form W-2 is a form an employer must file with the IRS annually for each employee for whom the employer must make a return of taxes to the IRS. *See* 26 C.F.R. § 31.6051-2(a). An employer must also give an employee a copy of that Form W-2. *Id.* § 31.6051-1(a). The fact that Anderson County "processes and stores" a Form W-2 it is required to create and file as Plaintiff's employer does not bring Anderson County under subsection (n). Such a W-2 was not "disclosed" to Anderson County by the IRS, as required under subsection (n). Nor is it "return information," in that it did not emanate from a disclosure by the IRS.

The Complaint alleges no facts to make it plausible that the Forms W-2 to which he refers were "return information" disclosed under subsection (n). As such, Plaintiff has not shown that

Iwanski's position as Anderson County Trustee or Chairman of the Anderson County Finance Committee brings him within Section 6103(a)(3).

The Court concludes Iwanski is not a person who may be sued under Section 7431. Plaintiff's disclosure claim against Iwanski will be **DISMISSED WITH PREJUDICE**.

## B. State-Law Claims for Invasion of Privacy and Intrusion into Private Affairs

State law claims brought in a federal-question case can only be heard by the Court through the exercise of supplemental jurisdiction. 28 U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary. District courts may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In making its discretionary decision, a district court should weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *accord Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

The third rationale of § 1367(c) applies here because the Court will dismiss all of the claims over which it has original jurisdiction. When all federal claims have been dismissed, the preferred disposition of state-law claims is dismissal, or, where a case has come into federal court on removal, remand to state court. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)). A federal district court should only exercise its discretion to retain supplemental jurisdiction after dismissing federal claims under limited circumstances, which frequently involve some degree of

forum manipulation. *See Carnegie-Mellon*, 484 U.S. at 357. There is no indication of manipulative tactics in this case and no other compelling reason for the Court to retain supplemental jurisdiction over Plaintiff's state-law invasion of privacy claims. The Court will therefore **GRANT** Defendant's motion to dismiss the state-law claims against them.

IV. **CONCLUSION**

The Court will **GRANT** Defendants' motions to dismiss (Docs. 29, 37). Plaintiff's claims under 26 U.S.C. § 7431 will be **DISMISSED WITH PREJUDICE**. Plaintiff's state-law claims will be **DISMISSED WITHOUT PREJUDICE**.

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**