IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DOYLE THORNTON TENO, III ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:18-cv-00159-CLC-HBG |
| ) | |
| MYRON IWANSKI, et al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS STEVE MEAD AND LESLIE MEAD'S
MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RULE 11
SANCTIONS**

COME now into Court Defendants Steve Mead and Leslie Mead, by and through counsel, and in support of their Motion for sanctions pursuant Fed. R. Civ. P. Rule 11(c), would show as follows.

**I.    Introduction**

As set forth in the Motion, the Meads seek Rule 11 sanctions in this case for their legal fees incurred on and after January 31, 2019, to the present, and not from the inception of the case. The reason for that is because, as set forth below in the Standard for Review section of this Memorandum, Plaintiff and his counsel had an obligation under Rule 11 to stop pursuing a frivolous lawsuit once, beyond any objective or subjective criteria, it was known to them that their case was frivolous. That moment in time occurred at least as of the filing of Plaintiff's response to the Motion for Summary Judgment on January 31, 2019 [Doc. 72]. Though at all times from the filing of the suit

1

to the Court's granting Defendants' Motion to Dismiss for failure of the Second Amended Complaint to state a cause of action on March 29, 2019 [Docs. 92 - 93] the suit has never had merit, Plaintiff's Response to the Summary Judgment Motion indicated, without question, Plaintiff had no facts in support of its cause of action. For a detailed analysis of this point, see the Reply to said Response filed by the Meads [Doc. 75]. In summary, on January 31, 2019, Plaintiff and Plaintiff's counsel could have had "no reasonable belief" at that time that Plaintiff had a cause of action. By email from the Mead's counsel February 6, 2019, Plaintiff's counsel was called upon to stop prosecuting a frivolous lawsuit, but he did not. See **Attachment 1** to the First Declaration of Brian Quist.

## II.   Standard for Review

Under Fed. R. Civ. P. 11, each filing presented to the Court carries an implied certification that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

In the Sixth Circuit, the test for imposing Rule 11 sanctions is "whether the individual's conduct was reasonable under the circumstances." <u>Union Planters Bank v. L & J Dev. Co.</u>, 115 F.3d 378, 384 (6th Cir. 1997). Whether sanctions are warranted is not determined in hindsight, but rather by examining counsel's conduct and reasonable beliefs when the pleading was filed. <u>Mann v. G & G Mfg., Inc.</u>, 900 F.2d 953, 958 (6th Cir. 1990).

However, Rule 11's reasonableness requirement "is not a one-time obligation." <u>Lee v. Miller</u>, No. 15-14255, 2018 U.S. Dist. LEXIS 99754, at *2-3 (E.D. Mich. June 14, 2018) (quoting <u>Runfola & Assocs. v. Spectrum Reporting II</u>, 88 F.3d 368, 374 (6th Cir. 1996)). Rather, Rule 11 is a continuing obligation on attorneys to refrain from pursuing meritless or frivolous claims at any stage of the proceedings. <u>Herron v. Jupiter Transp. Co.</u>, 858 F.2d 332, 336 (6th Cir. 1988).

In <u>Lee v. Miller</u>, No. 15-14255, 2018 U.S. Dist. LEXIS 99754, at *4-5 (E.D. Mich. June 14, 2018), the Court awarded sanctions against plaintiff's counsel for defendant counsel's attorney's fees, writing:

> Even if Plaintiff's counsel believed the asserted claims had merit when the lawsuit was initiated, discovery should have made clear that the facts did not support the claims and that they lacked merit. It is not *per se* unreasonable for a lawyer to zealously advocate for his client in the face of countervailing evidence. Nor is Rule 11 intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. However, an attorney is expected to know the law, including the proof required to establish the alleged claims, and should be sanctioned for continuing litigation asserting claims wholly lacking legal and factual merit.

3

Lee v. Miller, No. 15-14255, 2018 U.S. Dist. LEXIS 99754, at *4-5 (E.D. Mich. June 14, 2018).

The advisory committee's notes to Rule 11 provide that monetary sanctions should ordinarily be paid into court as a penalty because the purpose of Rule 11 is to deter rather than compensate. "However, under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation." Id. Accordingly, the rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party.

In summary, it is the position of the Meads that on January 31, 2019, Plaintiff and Plaintiff's counsel should have stopped pursuing a frivolous lawsuit under the continuing obligation analysis set forth above.

**III.    The Second Amended Complaint Analyzed Under Existing Law**

As argued quite thoroughly in Defendant Steve and Leslie Mead's Motion to Dismiss [Doc. 29] and supporting Memorandum [Doc. 30] and Motion for Summary Judgment [Doc. 65] and supporting Memorandum [Doc. 70], the federal statutes relied upon by Plaintiff in Count One did not apply to Mr. and Mrs. Mead. What makes an award of Rule 11 sanctions appropriate in this matter, however, is not just that the Court also found said Federal Statutes did not apply to Mr. and Mrs. Mead in dismissing Plaintiff's Complaint (see Court's Opinion [Doc. 92]). What makes Rule 11 Sanctions appropriate is the following:

4

1. Plaintiff never pled the statutes were applicable to the Meads.[1]

2. Plaintiff's Response to the Mead's Motion to Dismiss [Doc. 45] and Plaintiff's Consolidated Response to the Motions for Summary Judgment [Doc. 72] did not explain how the statutes applied to Mr. and Mrs. Mead.

3. Plaintiff's Second Amended Complaint asserted that Mr. and Mrs. Mead were the agents of Defendant Iwanski and made the frivolous assertion of law that Mr. and Mr. Mead, as agents, could be liable for the conduct of their alleged principal Mr. Iwanski.

4. Plaintiff's Second Amended Complaint made the frivolous assertion that Plaintiff could be damaged by the Mead's publicly disclosing Plaintiff's compensation paid to him by Anderson County when (a) said compensation is public record (See Affidavit of Tennessee's Open Records Counsel, [Doc. 66]), (b) Plaintiff himself publicly disclosed his own compensation in his Complaint [Doc. 27, p. 4], and (c) Plaintiff agreed to stipulate in the Pre Trial Order that his compensation was public record (see email between counsel that is **Attachment 7** to the First Declaration of Brian Quist, ¶ 6, filed in support of this Motion).

5. As set forth in the First Declaration of Brian C. Quist, counsel for the Meads (Mr. Quist) called upon Plaintiff's counsel numerous times to either demonstrate

---

[1] But this makes sense because there would actually be no way for Plaintiff to plead the federal statutes were applicable to Mr. and Mrs. Mead when, because they do not, so pleading would be impossible.

how the federal statues applied to the Meads or do the right thing and dismiss them. Mr. Quist's more significant exchanges with Plaintiff's counsel Mr. Ward went like this:

(a) Since the federal statutes on which Plaintiffs sued the Meads do not apply to Mr. and Mrs. Mead, on May 14, 2018, I called Mr. Ward and asked him to explain to me how those federal statutes applied to the Meads. At that time he could provide no such explanation and requested more time to consider it.

(b) On May 15, 2018, I sent an email to Mr. Ward with a copy of a draft Rule 12 Motion to Dismiss and Brief so that he would know precisely our position that the federal statutes did not apply to the Meads. See **Attachment 2**. In my email I wrote: "As mentioned in our conversation yesterday, I request that you demonstrate to me how these statutes apply to Mr. and Mrs. Mead or we enter a stipulation of dismissal."

(c) Mr. Ward never replied to my May 14 phone call or my May 15 email. Instead Mr. Ward issued a records subpoena [Doc. 21]. In an email to Mr. Ward on May 22, 2018, I wrote: "Your instituting discovery is totally contrary to your considering my request for a stipulation of dismissal. Accordingly, I regard the answer to my request for a stipulation of dismissal as a resounding 'NO.'" See **Attachment 3**.

(d) Plaintiff's first Amended Complaint filed on May 22, 2018 [Doc. 22] still did not plead a cause of action against Mr. and Mrs. Mead under the federal statutes or state a cause of action premised on disclosure of Plaintiff's compensation as a public official. In an email to Mr. Ward dated May 30, 2018, I wrote: "we have reviewed your Amended Complaint and undertaken an analysis. Our conclusion thus far is that Count One is still not 'fixed' by your Amendment. Because the federal statutes are not applicable to Mr. Iwanski, alleging my clients, Mr. and Mrs. Mead, are his agents does not help." See **Attachment 4**.

(e) On June 5, 2018, Mr. Ward filed the Second Amended Complaint [Doc. 27]. I emailed him on June 7, 2018, stating: "I still do not believe that the federal statutes in question apply to Mr. and Mrs. Mead and your Count I of the Second Amended Complaint still fails to state a cause of action against them. I further believe that Count II fails in that Mr. Teno, as a public employee and service provider to the County, has no right of privacy, as a matter of law, as it regards his compensation from the County. See **Attachment 5**.

(f) Since the depositions of the parties occurring November 29, 2018, and December 19, 2018, revealed absolutely no evidence in support of Plaintiff's claims against my clients, I called Mr. Ward on December 21, 2018 and requested he do the right thing and dismiss Mr. and Mrs. Mead. He replied back by phone on January 4, 2019, that he would not dismiss my clients.

(g) On February 6, 2019, I served the **Attachment 1** draft Rule 11 Motion and Brief referred to above. Mr. Ward did not respond.

(h) On March 15, 2019, I sent an email to Mr. Ward calling upon him to provide a witness who would testify at trial that Mr. or Mrs. Ward ever saw plaintiff's tax forms or distributed them. The email references the previously served draft Rule 11 Motion and Brief. That email is provided at **Attachment 6**. Mr. Ward never responded.

(i) Incidentally, an interesting development occurred in the case when, at my meeting with Mr. Ward on March 21, 2019, he agreed to stipulate that Mr. Teno's compensation as Deputy Anderson County Trustee and Delinquent Tax Attorney for Anderson County was public record. See **Attachment 7**. At this same meeting I also discussed with Mr. Ward my Rule 11 assertion previously made, but no agreement was reached.

First Declaration of Brian Quist, ¶ 5.

### IV. Factual Contentions

Plaintiff's factual contentions as to the key elements of his Second Amended Complaint never had evidentiary support. Namely, in response to the Meads' Motion to Dismiss and their Motion for Summary Judgment, Plaintiff provided absolutely no evidence that the federal statutes Plaintiff relied upon for Count One applied to defendants Steve and Leslie Mead, that the Meads ever saw Plaintiff's tax forms, or that they distributed Plaintiff's tax forms. Moreover, in Plaintiff's Consolidated Response in Opposition to Defendants' Motions for Summary Judgment [Doc. 72], Plaintiff and Plaintiff's counsel make the following factual assertions which were unsupported or entirely contrary to evidence in the record at that time:

7

1. On page 3, Plaintiff states "On March 31, 2018, after Defendant Iwanski received Plaintiff's 2016 and 2017 IRS Forms 1099, he provided Defendant Mead with specific details of Plaintiff's income information. (Steve Mead Dep. pp. 50-51; EX 12)." Nowhere in Steve Mead's deposition, let alone on pages 50 – 51, does Steve Mead testify that on March 31, 2018, Mr. Iwanski provided him details of Plaintiff's income information. See Dep. Steve Mead [Doc. 72-22].

2. On page 11, Plaintiff states that "Defendants obtained and reviewed Plaintiff's confidential IRS Forms. . . . Defendants reviewed Plaintiff's IRS Form W-2 and 1099 . . . ." However, Steve Mead, Leslie Mead, and Steve Emert testified in their depositions that they never obtained or viewed any tax or IRS form of Plaintiff. See Dep. Steve Mead 39:4 – 9 [Doc. 72-22]; Dep. Leslie Mead 16:6 – 15 [Doc. 72-23]; Dep. Steve Emert 25:15 – 20 [Doc. 72-24]. There is no testimony contrary to this position. Also, Myron Iwanski testified that he only saw Plaintiff's 1099 but not W-2. See Dep. Myron Iwanski pp. 42:16 – 25; 43:1 – 17 [Doc. 72-21].

Furthermore, as it regards Count Two, Plaintiff's responses to the motions did not establish that Plaintiff's compensation as Assistant Anderson County Trustee and Delinquent Tax attorney were not public record. In fact, in the end, as mentioned above, Plaintiff's counsel was agreeable to stipulate in the Pretrial Order that indeed Plaintiff's compensation was public record.

### V. Improper Purpose

As presented and argued in greater detail in the Mead's Memorandum in support of their Motion for Summary Judgment [Doc. 70, p. 3], this litigation was but a part of a

8

political squabble in Anderson County. As set forth in Steve Mead's Second Affidavit filed separately herewith, there is every indication Plaintiff's lawsuit was filed, and continued after January 31, 2019, for, as Mr. Mead put it, political payback for his opposing Anderson County Mayor Frank. Mr. Mead states:

> I would like to share the following reasons why I believe the instant suit against me, when filed and as it was prosecuted, was no more than political posturing and payback and had nothing to do with Mr. Teno allegedly being damaged for disclosure of his compensation as a public official, which compensation is of course public record anyway. Mr. Ward and Mr. Teno do need to be sanctioned and deterred from bringing politically motivated suits such as this one, ever again, for the following reasons:
>
> (a) Mr. Ward has a vendetta against me because (i) in 2016, he ran against me for a seat on the Anderson County Charter Commission and lost by a margin of almost 2 – 1 and I understand he was embarrassed by this; (ii) he was the treasurer for my opponent in the 2018 county commission race, and his side lost; (iii) the timing of the suit was no coincidence, it was filed just before the mayor primary just in time to hit the local newspaper; and (iv) I was responsible for a County Commission resolution that imposed a ban on Anderson County paying for attorneys representing the County, its employees, or officials when such attorneys have previously represented clients suing the County, its officials, or employees. Mr. Ward falls into that category as, for example, he has in the past represented clients against Anderson County and/or its officials and has also been paid legal fees by the County for work requested of him by Mayor Frank, and so this preclusion of him to now be paid legal fees by the County I am sure affects him financially. In short, there is every indication that Mr. Ward brought this action against me and Steve Emert for harassment. Ironically, I understand Mr. Ward has asked Anderson County to reimburse him for legal fees charged to Mr. Teno in this action.
>
> (b) Mr. Teno's political agenda against me also stems from my work on the Anderson County Commission. I have been a very vocal critic of the county outsourcing the delinquent tax attorney work that Mr. Teno is now doing. Taking the delinquent tax attorney work back "in-house" to be performed by the Law Director's office as has been done in the past) would, in my view, save County taxpayers well over $100,000 per year and dramatically effect Mr. Teno's income. Currently, Mr. Teno is the highest paid person in Anderson County government.

9

Second Aff. S. Mead, ¶¶ 5.

## V.     Award of Sanctions to the Meads

Should this Court grant this Motion and award sanctions, the Meads request that such an award of sanctions be to them for their attorneys' fees since January 31, 2019, including the costs for preparing this Rule 11 Motion and related documents.  As set forth in the Fist Declaration of Brian Quist, attorney for Mr. and Mrs. Mead, the attorneys' fees requested in the amount of $11,613.00 represents necessary work consistent with community standards, at hourly rates consistent with community standards, and supported by the requisite information pertaining to Tennessee Supreme Court Rules for this Court to make an award of attorney's fees.  First Decl. B. Quist, ¶¶ 6 – 10.  As Mr. Mead explained in his Second Affidavit, this litigation has been both needless and a financial burden on his family.  Mr. Mead states:

> I would like the Court to know that defending Mr. Teno's lawsuit was a significant financial burden for me and I would strongly request that, should the Motion be granted, sanctions be paid to me.  For example, I had to borrow money from two of my daughters to fund the initial retainer with Mr. Quist's law firm.  As further example, I have incurred defense costs from the inception of the case in May 2018 through February 1, 2019, of $16,723.00.  I have paid most of this, but do not seek reimbursement of this amount. I only seek reimbursement of the amounts incurred since January 31, 2019, as being the time, as explained in the supporting Memorandum, when Mr. Ward and Mr. Teno unquestionably knew they did not have a case.  That additional amount is $11,613.00.  Thus, the total Mr. Ward and Mr. Teno have cost me is $28,336.00.  This is real money to me.  I did not have insurance for this.
>
>     Though my wife and I do some financial services work, and I receive a small payment from being a county commissioner, my wife and I are basically retired senior citizens on a fixed income. Of the several examples

10

of how this litigation has imposed a financial burden on my wife and me, I would like to share that for many years we had planned a trip to Alaska for our fiftieth (50th) wedding anniversary (July 13th) but we have had to cancel our reservation because we can no longer afford it.

Second Aff. S. Mead, ¶¶ 3-4.

WHEREFORE, Steve Mead and Leslie Mead respectfully request this Court grant their Motion for Rule 11 Sanctions and award them their attorneys' fees for preparing this Motion, Memorandum, and all attorneys' fees and expenses expended to prepare this case for trial after the date of service of this Motion and supporting documents in the amount of $11,613.00.

Respectfully submitted this the __22nd__ day of April, 2019.

*/s/ Brian C. Quist*
_____
Brian C. Quist,         BPR #012762
Ann P. Kapsimalis,   BPR #035286
QUIST, FITZPATRICK, AND JARRARD, PLLC
2121 First Tennessee Plaza
800 South Gay Street
Knoxville, Tennessee 37929-2121
(865) 524-1873
bcquist@QCFlaw.com
apk@QCFlaw.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on this the **22nd day of April, 2019**, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail.

*/s/ Brian C. Quist*

_____
Brian C. Quist  TN BPR # 012762